| Fill in this information to identify the case: |
|---|
| Debtor name __PLAYERS NETWORK__ |
| United States Bankruptcy Court for the: DISTRICT OF NEVADA |
| Case number (if known)  20-12890-MKN |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

__PLAYERS NETWORK__'s Plan of Reorganization, Dated __June 18, 2020__

### Background for Cases Filed Under Subchapter V

**A. Description and History of the Debtor's Business**

Players Network's primary business is focused on television, video and new media production, delivery platforms and content. Initially founded to develop, produce, and provide an in-room gaming network the Company subsequently created what we believe to be the world's first 24-hour digital, tapeless, Video on Demand television broadcast, "Vegas on Demand" and produced over 2,900 original videos and television series ranging from short form programming videos to full episodic broadcast series. Players Network has been servicing the Las Vegas lifestyle industry since its formation date of March 16, 1993. Its clients include major companies such as MGM Grand, Caesars Entertainment, Golden Gaming, Stations Casinos as well as manufacturers such as IGT Williams and Aristocrat. Distribution partners for Players Network also include Comcast Communications, AT&T, Verizon Wireless, Dish Network, DirecTV, Google and Hulu among many others.

Most recently, the company has leveraged its media background to diversify its holdings into other emerging industries including developing brands for CBD and cannabis. To date, such holdings have not generated any revenue for the Debtor. The company plans to continue to utilize its original production and expertise in technology to develop additional vertically integrated lifestyle channels, including the relaunch of Vegas Entertainment, Health and Fitness as well as live events.

Many small cap, development stage companies, including Players Network, have limited avenues to raise capital. One of those methods is via public convertible debt which is offered to companies such as ours by a number of investment funds.

From time to time we entered into loan agreements using the capital for the development and growth of the company. Many of these loans worked well for both the company and the funds providing the loans. Several, however, turned out to be predatory and toxic both in the way they were presented to us and in the actions of the debt holders. In several cases, interest and what the company believes to be manufactured defaults, resulted in costs exceeding 80% per year. This was exacerbated by stock conversions that destroyed the company's share price resulting in a market cap loss of over $40 million.

As outlined in our filings, the COVID 19 pandemic essentially shuttered business in Las Vegas and eliminated our primary sources of revenue including production and marketing services leaving us with no option but to file for reorganization. However, as a part of those proceedings the company has also taken a legal stance to resolve the four worst of these toxic loans.

**B. Liquidation Analysis**

In the event of any adjudication into a straight bankruptcy liquidation proceeding, the Debtor would suggest to creditors that they will be able to look for recovery from property sold by the Trustee only at a straight liquidation sale. A liquidation analysis is attached to the Plan as **Exhibit 1**. The Debtor alleges and proposes that the value which it would receive for its property in liquidation would be substantially less than would be received through a plan of reorganization, yielding a diminished recovery, especially for general unsecured creditors, for the following reasons:

(1) Administrative expenses would be paid on a priority basis and before the general, unsecured creditors would receive any funds. Administrative expenses in liquidation proceedings often amount to between 10% and 25% of the value of the property liquidated. In this case, a substantial amount of potential equity could be "eaten up" by administrative expenses and court costs incurred with the liquidation proceedings, which would probably exceed the administrative expenses in a reorganization proceeding.

(2) A forced sale of the property owned by Debtor, through a straight bankruptcy proceeding, rather than an orderly realization of value in a reorganization proceeding, may erode considerably the potential value of the Debtor's assets for junior lienholders and unsecured creditors. For example, a bankruptcy trustee in a straight liquidation bankruptcy proceeding would be forced to sell the property at public auction and the bankruptcy trustee would probably not be able to guarantee that the prices paid for the assets would be reasonable or appropriate to the value paid by the Debtor; rather, the prices paid might have to be in cash and at a reduced market value price. The liquidation value has been calculated at approximately $208,000.00

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as **Exhibit 2**.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of **$197,284.55** over the next three (3) years.

The final Plan payment is expected to be paid on **June 2025**.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **PLAYERS NETWORK** (the *Debtor*) from future income.

| Debtor | PLAYERS NETWORK | Case number (if known) 20-12890-MKN |
|---|---|---|
| | Name | |

This Plan provides for:   **0** classes of priority claims;
**0** classes of secured claims;
**1** classes of non-priority unsecured claims; and
**1** classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **$0.04** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) Any payments under the Plan for services rendered or costs or expenses shall be approved by the court and paid through the Trustee. After confirmation, current directors and officers, as disclosed in the schedules, shall continue their current positions. Debtor believes that the continuances of such officers and directors, in such offices, is consistent and equity security holders. Administrative claims shall be paid upon court approval, by the Trustee, in advance of any payment to unsecured creditors, but may be paid pro rata after confirmation. Administrative claims are expected to consist of Trustee and U.S. Trustee fees and expenses of the attorney for the Debtor-In-Possession.

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | Oversecured creditors as listed in Article 4. |
| 2.02 | **Class 2** | The claims of undersecured creditors listed as Class 2 Creditors of Article 4, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 3** | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4** | Interests of shareholders. |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full from monthly payments from Debtor, through the Trustee. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid within 5 years after the order for relief. Non are known at this time. |
| 3.04 | **Statutory fees** | All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter on the Code. Any U.S. Trustee fees owed on or before the effective date of this plan will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01   Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☐ Unimpaired | N/A |
| Class 2 – **Secured claim of** | ☐ Impaired<br>☐ Unimpaired | N/A |
| Class 3 – **Non-priority unsecured creditors** | ☑ Impaired<br>☐ Unimpaired | Unsecured Creditors will be paid 4% of their allowed claims over the life of the Plan, which is requested to extend over five years. Debtor is qualified for a three-year plan, however, it has elected to pay disposable income over five years pending court approval. Plan payments are $2,000.00 for the first six months, then payments will increase to $4,403.42 for fifty-four months for a total of five years. |

| Debtor | PLAYERS NETWORK | Case number (if known) 20-12890-MKN |
|---|---|---|
| | Name | |

| | Class 4 - Equity security holders of the Debtor | ☐ Impaired<br>☑ Unimpaired | All current shareholders shall retain their current interests unimpaired by the Plan. |
|---|---|---|---|

### Article 5: Allowance and Disallowance of Claims

| 5.01 | Disputed Claim | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.<br>Andrew H. Orgei<br>Auctus Fund, LLC<br>Black Mountain Equities, Inc.<br>Gemini Finance Corp.<br>Katherine Petersen<br>LG Capital Funding, LLC c/o Joseph Zelmanovitz, Esq.<br>Michael S. Pratter<br>Sea Otter Global Ventures<br>Todd Peterson |
|---|---|---|
| 5.02 | Delay of distribution on a disputed claim | No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order]. |
| 5.03 | Settlement of disputed claims | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | Assumed executory contracts and unexpired leases | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: **N/A** |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ____ days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

All disposable income received by Debtor will be devoted to payments to Unsecured Creditors. This "current monthly income" of Debtor will be utilized to pay unsecured creditors as required by the confirmed Plan over the 60 month disposable income period.

### Article 8: General Provision

| 8.01 | Definitions and rules of construction | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: N/A |
|---|---|---|
| 8.02 | Effective Date | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |

| Debtor | **PLAYERS NETWORK** | Case number (*if known*) 20-12890-MKN |
|---|---|---|
| | Name | |

| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
|---|---|---|
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate Governance** | Debtor has prohibited future issuances of non voting securities via Corporate Resolution dated June 16, 2020. A copy of said Corporate Resolution is attached hereto as **Exhibit 3**. |
| [8.08 | **Retention of Jurisdiction** | The Court retains jurisdiction of for purposes of applications for compensation, objections to claims and other administrative matters until the final decree has been entered. |

## Article 9: Discharge

Confirmation of this Plan does not discharge any debt proved for in this Plan until the court grants a discharge on completion of all payments under this PLan, or as otherwise provided in §1192 of the Code. The Debtor will not be discharged from any debt excepted for discharge under §523 of the Code, except as proved in Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    (i) imposed by this Plan; or

    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

    or

    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

1. Default. In case of failure to make a payment provided for under this Plan, then, after 15 days notice given by the Trustee or affected creditor to the Debtor and Debtor's attorney, unless cured within said time, Debtor shall be deemed to be in default under this Plan.

2. Lien Avoidance. To the extent any lien is determined as totally unsecured, under this Plan, said lien shall be avoided in full upon discharge of the Debtor.

3. Prepayment. The Debtor may prepay any Allowed claims under the Plan in advance without prepayment penalty.

4. Modified Treatment. A holder of an Allowed claim in any Class may voluntarily agree to a less favorable treatment of its claim than is as set forth in the Plan; provided, however, that any agreement to modify the treatment of a credtor's claim must be in writing and signed by the creditor/claimant.

5. Interest Rate. Unless otherwise specified, all interest to be paid under the Plan shall be paid at the federal judgment rate per 28 U.S.C. § 1961.

6. Disallowance of Claims Not Allowed and Tardy Proofs of Claim. The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtor's filed bankruptcy schedules and for which no proof of claim was filed on or prior to the Bar Date; (b) were listed on the Debtor's schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the Bar Date; (c) are the subject of a proof of claim for a pre-petition claim that was filed after the Bar Date.

7. Elimination of Vacant Classes. Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed claim or a claim temporarily Allowed under Fed.R.Banr.P. 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to the Code.

8. Cure Claims. Any party to an executory contract or unexpired lease who objects to the cure amounts listed in Section 6.1 must file and serve an objection thereto by no later than the deadline set by the Bankruptcy Court for filing objections to the Plan. Failure to file and serve a timely objection shall be deemed consent to the cure amounts listed in Section 6.1.

9. Plan Distributions:
    a) If the Plan is confirmed on a consensual basis pursuant to § 1191(a) of the Code, then: (a)the Subchapter V Trustee will be terminated upon substantial consummation pursuant to §1183 of the Code; and (b) the Reorganized Debtor shall make all payments as required under the Plan.
    b) If the Plan is confirmed on a non-consensual or "cramdown" basis pursuant to §1191(b) of the Code, then the Reorganized Debtor shall provide for the submission of all or such portion of its future earnings, income and otherwise accessible funds as is necessary for the execution of the Plan, but shall remain in charge of distributions directly to creditors Under the Plan.

10. Compensation of Subchapter V Trustee. The Subchapter V Trustee shall be entitled to reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred through the Effective Date pursuant to and consistent with §330(a)(1) of the Code.

11. Default Under Plan; Remedies. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as the Debtor is not in "Material Default" under the Plan. In the event the debtor fails to timely perform any of the

Debtor **PLAYERS NETWORK** _____ Case number (*if known*) 20-12890-MKN
      Name

obligations set forth in the Plan from and after the Effective Date, the applicable creditor or party-in-interest shall notify the Debtor and the Debtor's Counsel via email per the email addresses below, as well as the Subchapter V Trustee Ted Burr of the default in writing in accordance with the notice of provisions herein. If the Debtor fails within thirty (30) calendar days after the date of email of the notice of default either: (i)to cure the default; (ii)to obtain from the Bankruptcy Court an extension of time to cure the default, which shall be given for good cause shown if the cure reasonably requires more than thirty (30) days to cure and the Debtor initiates reasonable steps to begin such cure and completes all reasonable and necessary steps to cure sufficient to produce compliance as soon as reasonably practical; or (iii) to obtain from the Bankruptcy Court a determination that no default occurred, then Debtor is in "Material Default" under the Plan to all the members of the affected Class. If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights and remedies it may have under the contract(s) between the parties and/or applicable law, as modified by the PLan, and without further action by or proceeding before the Bankruptcy Court. Upon Material Default, any member of a class affected by the default: (i)may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Court has relief from automatic stay to the extent necessary, and may pursue its lawful remedies to enforce and collect the obligations owing to it under the Plan.

12. Discharge. Upon the completion of its payment obligations under the Plan, the Debtor shall seek a discharge pursuant to §1192 of the Code.

13. Governing Law. Except to the extent that the Code or other federal law is applicable or as provided in any contract, instrument, release or other agreement entered into in connection with the Plan or in any document which remains unaltered by the Plan, the rights, duties and obligations of Debtor and any other person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

14. Entire Agreement. The Plan, as described herein, and exhibits hereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafer be agreed by the parties in writing.

15. Effectuating Documents, Further Transactions. On and after the Effective Date, the Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of Debtor, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant of the Plan.

Respectfully submitted,

X */s/Mark Bradley* _____      **MARK BRADLEY** _____
   MARK BRADLEY                                                            MARK BRADLEY

X/*s/Thomas E. Crowe* _____      **Thomas E. Crowe** _____
   THOMAS E. CROWE                                                   Thomas E. Crowe

<u>**EXHIBITS TO PLAN**</u>

Exhibit 1: Debtor's Liquidation Analysis

Exhibit 2: Debtor's Income/Expense Projection for 3 Years

Exhibit 3: Corporate Resolution

# Exhibit 1

## LIQUIDATION ANALYSIS

| Item | Current Value | Liens | Liquidation Value |
|---|---|---|---|
| Debtor in Possession Bank Account | $ | $0.00 | $ |
| Company Shares (Treasury Stock) | $288,000.00 | $0.00 | $0.00 |
| Audio Computers | $10,000.00 | $0.00 | $10,000.00 |
| Civil Lawsuit against Katherine Petersen | $150,000.00 | $0.00 | $150,000.00 |
| Civil Lawsuit against Todd Peterson | Unknown | | |
| Video Library of Old Las Vegas Entertainment | $48,000.00 | $0.00 | $48,000.00 |
| NexgenTV – Content Delivery System | Unknown | | |
| Totals | $496,000.00 | $0.00 | $208,000.00* |
| | | | |

*Unless a Plan can be confirmed, stock is worthless.

# Exhibit 2

## SCHEDULE OF MONTHLY PROJECTED CASH FLOWS FOR JULY 1, 2020 THROUGH JUNE 30, 2023

    11.01      Financial Projections.

|  | 7/1/2020-6/30/2021 | 7/1/2021-6/30/2022 | 7/1/2022-6/30/2023 |
|---|---|---|---|
| Projected Income: |  |  |  |
| 1. Business Income | $13,750.00 | $14,025.00 | $14,305.50 |
| TOTAL: | $13,750.00 | $14,025.00 | $14,305.50 |
| Cost of Goods | $556.71 | $567.85 | $579.20 |
| Projected Expenditures: | $6,391.77 | $6,519.60 | $6,649.99 |
| Estimated Admin. Expenses: | $1,416.67 | $1,458.33 | $1,500.00 |
| Monthly net income: | $5,384.85 | $5,479.22 | $5,576.31 |
| Summary of PDI by year: | $64,618.20 | $65,750.64 | $66,915.65 |
| TOTAL PDI[5]: | $197,284.55 |  |  |

1= income is projected to increase at 2% per annum based on historical norms.
2= generally based upon 2% inflation estimate.

Exhibit 3

## RESOLUTION IN LIEU OF DIRECTORS' MEETING

THE UNDERSIGNED, being the Board of Directors of PLAYERS NETWORK, a Nevada corporation, in lieu of a Directors' meeting, hereby consent to the following resolution:

RESOLVED, that the Corporation hereby approves and agrees that the business is prohibited from issuing future non-voting securities while the Chapter 11 Plan Confirmation is ongoing.

IT IS FURTHER RESOLVED that the Corporation may continue to issue non-voting securities once the Chapter 11 Plan is confirmed.

DATED this ___16th___ day of June, 2020

PLAYERSNETWORK, INC.

_____
MARK BRADLEY
DIRECTOR

_____
BRETT POJUNIS
DIRECTOR

_____
MICHAEL BERK
DIRECTOR

DocuSign Envelope ID: 205A4124-430F-49F1-828D-0ECAF3076E31

## RESOLUTION IN LIEU OF DIRECTORS' MEETING

THE UNDERSIGNED, being the Board of Directors of PLAYERS NETWORK, a Nevada corporation, in lieu of a Directors' meeting, hereby consent to the following resolution:

RESOLVED, that the Corporation hereby approves and agrees that the business is prohibited from issuing future non-voting securities while the Chapter 11 Plan Confirmation is ongoing.

IT IS FURTHER RESOLVED that the Corporation may continue to issue non-voting securities once the Chapter 11 Plan is confirmed.

DATED this ___16th___ day of June, 2020

PLAYERSNETWORK, INC.

_____
MARK BRADLEY
DIRECTOR

_____
BRETT POJUNIS
DIRECTOR

_____
MICHAEL BERK        6/16/2020
DIRECTOR