IVAN J. REICH, ESQ.                                    E-Filed  7-20-20
FBN: 778011
Nason, Yeager, Gerson, Harris & Fumero, P.A.
3001 PGA Boulevard, Suite 305
Palm Beach Gardens, Florida  33410
Tel.:  561-227-4562
Fax:  561-982-7116
Email:  ireich@nasonyeager.com
*Attorneys for SBI Investments LLC, 2014-1*

BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
Law Office of Brian D. Shapiro, LLC
510 S. 8th Street
Las Vegas, NV 89101
Tel:  702-386-8600
Fax: 702-383-0994
*Attorneys for SBI Investments LLC, 2014-1*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: Players Network  dba The Players Network & The Players Network, Inc. | Case No.  20-12890-mkn<br>Chapter 11<br><br>Date:  7-22-2020<br>Time: 9:30 a.m |
| Debtor. | |

**CREDITOR, CONVERTIBLE NOTE HOLDER, SBI INVESTMENTS LLC, 2014-1'S**

**SUPPLEMENT TO OBJECTION TO DEBTOR'S MOTION FOR ORDER TO EXCUSE**

**LISTING OF EQUITY SECURITY HOLDERS (D.E. 17)**

Creditor, SBI Investments LLC, 2014-1[1], ("SBI"), by and through undersigned counsel, and pursuant to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Nevada, as the holder of that certain Convertible

---

[1] Inaccurately listed on Debtor's Schedules as Sea Otter Global Ventures LLC ("Sea Otter") not SBI, as a nonpriority unsecured creditor that is a disputed business debt for $562,063.00.

Promissory Note (the "Note") given by Debtor, Players Network, Inc. ("Debtor" or "PNTV") to SBI in the principal amount of $240,000 with issue date of May 1, 2018, and maturity date of January 28, 2019, for $638,681.18 due and owing (the "Amount Due") from PNTV to SBI, as of the Petition Date, hereby submits its supplement to the Objection to Debtor's Motion (the "Motion") for an Order to excuse Debtor from having to list its equity security holders (D.E. 17), which Motion is set for July 22, 2020 at 9:30 a.m. PD.

Attached hereto are additional exhibits referencing the underlying statements contained with the objection.

| Exhibit Number | Description |
|---|---|
| **1** | 5-14-20  Correspondence from Anthony Michael Panek of FavianVanCott |
| **2** | 5-14-20 – Rule 144 Seller's Representation Letter |
| **3** | 5-14-20 – Notice of Conversion |
| **4** | E-mail Correspondence with Players Network Representatives – Mark Bradley and Brett Pojunis |

Respectfully submitted,


By:   _/s/ Brian D. Shapiro_
      BRIAN D. SHAPIRO, ESQ.
      Nevada Bar No. 5772
      Law Office of Brian D. Shapiro, LLC
      510 S. 8th Street
      Las Vegas, NV 89101
      Tel:  702-386-8600
      Fax: 702-383-0994
      Attorneys for SBI Investments LLC, 2014-1

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3

*I HEREBY CERTIFY* that on this 20h day of July, 2020, a true and accurate copy of SBI's

4

5

Supplement to Objection to the Motion has been furnished by CM/ECF electronic service to

6

those parties receiving electronic notices via CM/ECF, and to (i) Debtor, through its counsel,

7

**THOMAS E. CROWE**, via email @ tcrowe@thomascrowelaw.com, (ii) the Standing Trustee,

8

9

Edward Burr, via email at Ted@macrestructuring.com, and (iii) the Office of the United States

10

Trustee, through its counsel, Lindsay Kolba, via email at lindsay.p.kolba@usdoj.gov.

11

12

13

Respectfully submitted,

14

15

16

By: ____*/s/ Brian D. Shapiro*_____

17

BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772

18

Law Office of Brian D. Shapiro, LLC
510 S. 8th Street

19

Las Vegas, NV 89101

20

Tel: 702-386-8600
Fax: 702-383-0994

21

Attorneys for SBI Investments LLC, 2014-1

22

23

24

25

26

27

28

# EXHIBIT 1

# Fabian VanCott

**ANTHONY MICHAEL PANEK**
Attorney
Direct Dial: 801.323.2214
General Dial: 801.531.8900
apanek@fabianvancott.com

May 14, 2020

Ladies and Gentlemen:

I have been retained to issue to you this opinion and analysis with respect to 2,915,452 shares of common stock (the "**Shares**") of Players Network, Inc., a Nevada corporation (the "**Company**"), issued to SBI Investments, LLC 2014-1 ("**SBI**") pursuant to a conversion on a series of convertible notes between the Company and SBI.

*Transaction Background*

On May 1, 2018, Company and SBI entered into a Convertible Note (the "**Note**") for $240,000.00 (OID $225,000.00). Payment of the purchase price was made via wire transfer to the Company on May 2, 2018. On May 14, 2020, SBI submitted a notice of conversion whereby it converted $10,000.00 of debt (all principal) into 2,915,452 Shares. After this conversion, $155,000.00 remains outstanding under the Note. The Note is disclosed on page 15 of the Company's 10-Q for the period ending June 30, 2018. Funding of the Note took place more than two (2) years ago, meaning that any balance due on the Note would be eligible for resale under Section 4(a)(1).

Section 4(a)(l) of the Securities Act of 1933 ("**Securities Act**") provides an exemption for a transaction "by a person other than an issuer, underwriter, or dealer." Rule 144 provides a non-exclusive safe harbor for the sale of securities under Section 4(a)(1), however, in the event that Rule 144 is unavailable a holder of securities may still rely upon Section 4(a)(1). The Company has not filed its previously due 10-K. As a result, this opinion letter speaks to the sale of unaffiliated restricted securities by SBI under Section 4(a)(1).

As counsel, we have examined such matters of fact and questions of law as we have considered appropriate for purposes of this letter. We have relied on all reports filed with the SEC, without having independently verified such factual matters. We are opining herein as to the federal securities laws, and we express no opinion with respect to the applicability thereto, or the effect thereon, of the laws of any other jurisdiction or as to any matters of municipal law or the laws of any local agencies within any state, nor to the underlying rationale nor judgment of the business transaction between the Company and SBI.

ATTORNEYS AT LAW

215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Tel: 801.531.8900   Fax: 801.596.2814
www.fabianvancott.com

We have relied upon the following additional information in rendering our opinion:

1. The information set forth above is true and correct.
2. SBI is the true and valid beneficial holder of the Shares effective no later than May 2, 2018.
3. As of May 13, 2020, the Company has 1,200,000,000 shares of common stock authorized and approximately 865,409,104 shares of common stock issued and outstanding.
4. Neither SBI, nor its affiliates, is an officer, director, owner of ten percent (10%) or more of the outstanding capital stock of the Company, or is otherwise in a controlling position with, or an affiliate of, the Company (nor been so designated during the three (3) months immediately preceding the date hereof), as defined in paragraph (a) of Rule 144.
5. None of the Shares are subject to any stop-order or any agreement granting any pledge, lien, mortgage, hypothecation, security interest, charge, option, encumbrance, or lock-up.
6. SBI has no knowledge of, nor is either in possession of, any material non-public information relating to the Company.
7. The conversion notice as submitted is true and correct in all respects.

## Discussion

Section 4(a)(l) of the Securities Act of 1933, as amended, provides an exemption for a transaction "by a person other than an issuer, underwriter, or dealer." The following discussion considers the definitions of issuers, underwriters, and dealers, as well as the nature of SBI, and opines on whether or not either of them falls into any such categories.

*SBI is not the Issuer*

Section 2(4) of the Securities Act defines an "issuer" as any person who issues or proposes to issue any security. SBI is not an issuer; rather, the Company is the issuer.

*SBI is not an Affiliate*

Rule 405 defines an "affiliate" as a "person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with the person specified." "Control" means the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." SBI is not an officer, director, employee, or 10% shareholder of the Company. Thus, SBI is not an affiliate to the Company.

*SBI is not an Underwriter*

Section 2(11) of the Securities Act defines an "underwriter" as any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking.

The key element in the analysis as to whether or not SBI is an underwriter is whether the Shares were acquired with a view to participate in or engage in a "distribution" of the Company's securities. Distribution is not defined by the Securities Act, but is essentially synonymous with "public offering." Therefore, the first prong of analysis is whether a non-public offering can be shown to have been made by the Company. In such a case, the possibilities are diminished that SBI's subsequent sale of the Shares would be considered a distribution and that SBI would be deemed an underwriter. The second prong of analysis is whether SBI acquired the Shares "from [the] issuer with a view to" engage in a "distribution."

*Company's Offering is Non-Public*

Section 4(a)(2), applicable to issuers, exempts from the registration requirements under the Securities Act, "transaction(s) by an issuer not involving a public offering." In the determination of whether or not the issuance of the Shares are a "public offering," I rely upon the factors set out by *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953) and its progeny, namely, *Doran v. Petroleum Management Corp.*, 545 F.2d 893, 900 (5th Cir. 1977) *and Hill York Corp. v. American Int'l Franchises, Inc.*, 448 F.2d 680, 687-689 (5th Cir. 1971), and Securities Act Release No. 4552 (November 6, 1962). Those cases and releases set out relevant factors in determining whether an offering is public or private, including: (1) the number of offerees and their relationship to each other and to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. I also rely on the factors set out in *Cook v. Avien, Inc.*, 573 F.2d 685, 691 (1st Cir. 1978), wherein the court held that sales may be exempted if a private offering is made in which the purchasers: (1) are limited in number, (2) are sophisticated, (3) have a relationship with the issuer enabling them to command access to information that would otherwise be contained in a registration statement.

The issuance by the Company in which SBI acquired the Shares was a private transaction that did not involve any public offering. SBI has held these securities for over twenty (24) months since the Company made its initial offering to SBI. These factors, in light of one another and as a whole, lead me to conclude and opine that the issuance of the Shares to SBI was a non-public transaction and did not amount to a public offering.

*Acquisition from Issuer with a View to Distribution*

The second prong of analysis focuses on whether SBI acquired the Shares from the Company with a view to engage in a "distribution." A key factor used in the determination of whether or not SBI acquired the Shares with a view to engage in a distribution is the determination of whether or not the Shares have "come to rest" with that shareholder, rather than the factual determination that

such shareholder is merely a conduit through which the issuer is making a public offering. A key factor in this determination is the timeframe in which SBI has held the Shares. For purposes of holding period, payment of consideration from SBI to the Company will have been made over two (2) years ago.

This factor and its relevancy was highlighted in *United States v. Sherwood*, 175 F.Supp. 480, 483 (S.D.N.Y. 1959), "The passage of two years before the commencement of distribution of any of these shares is an insuperable obstacle to my finding that Sherwood took these shares with a view to distribution thereof." *Sherwood* indicates that passage of time is relevant in whether shares were acquired from the issuer with the interest to distribution. Here, twenty-four (24) months passed from the initial acquisition from the issuers. No public distribution will have taken place until after two years since the original issuance. These circumstances would indicate that when the shares were purchased *from the issuer* they were purchased without a view to distribution as that phrase has been commonly held to mean.

Therefore, where the Company's issuance of the Shares to SBI did not involve a public offering, and SBI is holding the Shares for their own account, SBI should not be deemed an underwriter under the Securities Act.

*SBI is not a Dealer*

Section 2(a)(12) of the Securities Act defines a dealer as a person who engages for all or part of their time, directly or indirectly, as agent, broker, or principal in the business of offering, buying, selling, or otherwise dealing or trading in the securities of another person. Based upon my investigation, I have determined that SBI do not engage in the business of offering, buying, selling, or otherwise dealing or trading in securities owned by another person, with respect to the Shares. In this instance, the Shares were issued to SBI solely under the terms of the Note, and are deemed to have been held and acquired for SBI's own account. Thus, SBI is not a dealer with respect to the Shares. The shares have not been publicly bought or sold in more than two (2) years from the initial issuance of the Notes from which the Shares came, and thus does not rise to the level of concern that SBI is otherwise acting as a dealer of the securities, nor selling them for the account of another.

Section 3(a)(5)(A) of the Exchange Act defines dealer as "any person engaged in the business of buying and selling securities…for such person's own account through a broker or otherwise." Section 3(a)(5)(B) of the Exchange Act explicitly excludes from the "dealer" definition "a person that buys or sells securities…for such person's own account, either individually or in a fiduciary capacity, but not as a part of a regular business." Hence, whether a person is a "dealer" turns on two factual questions: (i) whether a person is "buying and selling securities for its own account," and (ii) whether a person is engaged in that activity "as part of a regular business."

To be a dealer, a person has to both buy and sell securities. In a proposed release, the SEC had indicated that a dealer purchases and sells securities in principal transactions where it either

buys securities from customers and takes them into its own inventory or sells securities to customers from its own inventory.

In our view, the key issue is to distinguish what is generally considered the traditional activities of a dealer from the activities of an investor particularly in light of the breadth of the definition of a "dealer." Unfortunately, we have not been able to find a great deal of guidance from the SEC on this point.

In a letter from Susan Walters, Office of Chief Counsel, she indicated that a dealer must buy and sell or be willing to buy and sell, contemporaneously. This approach is necessary to distinguish dealers from investors who buy and sell a security for investment purposes, but sometimes hold the position for only a short amount of time.

In the Davenport Management, Inc., April 13, 1993 no action letter, the SEC granted no action relief to a partnership which made equity and equity-related investments in middle market companies and which had taken an active role in the affairs of each investee company. The SEC did indicate that the partnership's purchases of securities "will in most cases put the partnership in a position to exercise significant influence over the management and operations of the companies…and that all of the partnership's investments will be made with a view toward long-term appreciation rather than immediate resale." The SEC distinguished the activities of the partnership from the typical activities of a dealer in that the partnership will not (1) act as a underwriter or participate in a selling group in any distribution of securities; (2) carry a dealer inventory in securities; (3) quote a market in any security; (4) advertise or otherwise hold itself out to the public as a dealer, or as being willing to buy or sell any security on a continuous basis; (5) render any investment advice; (6) extend or arrange for the extension of credit on securities; or (7) lend any securities.

In the Burton Securities, SEC No-Action Letter (December 5, 1977) the SEC distinguished a dealer from a trader or other investor and stated that "a person who buys and sells securities for his own account in the capacity of a trader generally "is not considered to be engaged in the business of buying and selling securities and, consequently, would not be deemed a dealer under the Exchange Act."

In the October 1, 1998 written testimony of Richard Lindsey, then Director of the SEC, before the House Committee on Banking and Financial Services Concerning Hedge Fund Activities in the U.S. Financial Markets, expanded on the distinction between trader and dealer. He indicated that "Hedge funds typically claim an exclusion from registration as securities dealers under Section 15(a) of the Securities Exchange of 1934 based on the "trader" exception to the definition of "dealer." In general, a trader is an entity that trades securities solely for its own investment account and does not carry on a public securities business. On the other hand, a dealer buys and sells securities as part of a regular business, deals directly with public investors, engages in market intermediary activities, and may provide other services to investors."

In the Acqua Wellington North American Equities Fund Ltd., SEC No-Action Letter dated July 11, 2001, the SEC granted no-action relief to a Fund that provided ELOCs to its client companies, just as SBI does here. In the letter requesting no-action relief, it was represented to the SEC that the Fund does not advertise, distribute promotional materials, hold conferences or otherwise holds itself out as a dealer nor does the Fund directly solicit public companies to enter into equity lines of credit. These authorities inform us that under and reasonable assessment of the facts of the instant case, that SBI is not a dealer

Based on all of the foregoing, we believe that SBI and/or its managing members are not required to register as a broker-dealer under the Exchange Act. In rendering this opinion as to SBI's managing members, we assume that the activities of such members are limited to managing the activities of SBI as described above.

## Conclusion

By virtue of the foregoing, we are of the opinion that the Shares held by SBI under the circumstances set forth above, may be sold immediately in a public market or by private transfer by SBI without registration under the Act in reliance on the Section 4(a)(l) exemption from registration and need not bear a restrictive legend pertaining to any sale or disposition of said Shares.

Our opinions are subject to: (i) the effect of bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium, or other similar laws relating to or affecting the rights and remedies of creditors; (ii) the effect of general principles of equity, whether considered in a proceeding in equity or at law (including the possible unavailability of specific performance or injunctive relief), concepts of materiality, reasonableness, good faith and fair dealing, and the discretion of the court before which a proceeding therefor may be brought; (iii) the invalidity under certain circumstances under law or court decisions of provisions providing for the indemnification of or contribution to a party with respect to a liability where such indemnification or contribution is contrary to public policy; and (iv) we express no opinion with respect to: (a) provisions for liquidated damages, default interest, late charges, monetary penalties, make-whole premiums or other economic remedies to the extent such provisions are deemed to constitute a penalty, (b) consents to, or restrictions upon, governing law, jurisdiction, venue, arbitration, remedies or judicial relief, (c) any provision requiring the payment of attorneys' fees, where such payment is contrary to law or public policy, (d) advance waivers of claims, defenses, rights granted by law, or notice, opportunity for hearing, evidentiary requirements, statutes of limitation, trial by jury or at law, or other procedural rights, (e) waivers of broadly or vaguely stated rights, (f) provisions for exclusivity, election or cumulation of rights or remedies, (g) provisions authorizing or validating conclusive or discretionary determinations, (h) proxies, powers and trusts, (i) provisions prohibiting, restricting, or requiring consent to assignment or transfer of any right or property and (j) the severability, if invalid, of provisions to the foregoing effect.

We have assumed (a) that all of the documents referenced herein (collectively, the **"Documents"**) have been duly authorized, executed, and delivered by the parties thereto, (b) that

215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Tel: 801.531.8900   Fax: 801.596.2814
www.fabianvancott.com

the Documents constitute legally valid and binding obligations of the parties thereto, enforceable against each of them in accordance with their respective terms, and (c) that the status of the Documents as legally valid and binding obligations of the parties is not affected by any (i) breaches of, or defaults under, agreements or instruments, (ii) violations of statutes, rules, regulations or court or governmental orders, or (iii) failures to obtain required consents, approvals or authorizations from, or make required registrations, declarations or filings with, governmental authorities.

The opinion expressed herein is given as of the date hereof and I disclaim any obligation to advise you of any change in any matter set forth herein. This opinion shall remain valid until the Company's next filing due date and shall expire at that time regardless of whether or not the Company makes its requisite filing. Further, I provide no opinion, nor make any judgments, as to the business rationale behind any of the underlying transactions between any of the parties, including the Company. In addition to the Company's transfer agent, this legal opinion may be relied upon and issued for the benefit of SBI's Broker-Dealer, including its affiliates and advisors.

Thanks.

Anthony Michael Panek

215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Tel: 801.531.8900   Fax: 801.596.2814
www.fabianvancott.com

EXHIBIT 2

**RULE 144 SELLER'S REPRESENTATION LETTER – NON-AFFILIATE**

**Deposit of Free Trading Shares**

To Whom It May Concern:

I, the undersigned, submit this form to you in order to present all facts necessary, pursuant to SEC rule 144 of the Securities ACT on 1933, to request authorization to sell the shares in
The Players Network _____ (the "Company") set forth below without being subject to the trading restriction placed on affiliates.

| (ISSUER) | (COMMON, PREFERRED, ETC.) | (CUSIP) | (QUANTITY) |
|---|---|---|---|
| The Players Network | Common | | 2,915,452 |

1.  The undersigned is not at present and has not been during the preceding three months, an officer, director or 10% shareholder of the Company or in any other way an "affiliate" of the Company within the meaning of Rule 144(a)(1).

2.  My holding period: (mark one box)

    ☐  Beneficial owner for at least 6 months but less than 1 year*

    ☑  Beneficial owner for one year or more

3.  I fully paid all consideration for, was the beneficial owner of, and bore the full risk of ownership on these securities since the later of the date the securities were acquired from the Issuer or from an affiliate of the Issuer. The shares were acquired on: 5/3/2018 _____

4.  Below is a brief explanation of how these shares were acquired:

    Via convertible promissory note

5.  Manner of payment:

    Wire payment

6.  I know of no important development affecting the Company or its business or products which has not been made public, and I confirm that I have requested you to sell such shares for personal reasons and not because of any information which I may have with respect to the Company or its current or prospective operations.

The undersigned represents that the information furnished above is correct and complete to the best of his knowledge, information and belief.

| | |
|---|---|
| Printed Account Name(s): SBI Investments LLC | Account Number: RE 0571 |
| Account Holder Signature(s): *[signature]* | Date: 5/14/2020 |

EXHIBIT 3

**EXHIBIT A -- NOTICE OF CONVERSION**

     The undersigned hereby elects to convert $___10,000___ principal amount of the Note (defined below) into that number of shares of Common Stock to be issued pursuant to the conversion of the Note ("Common Stock") as set forth below, of PLAYERS NETWORK, INC., a Nevada corporation (the "Borrower") according to the conditions of the convertible note of the Borrower dated as of May 1, 2018 (the "Note"), as of the date written below. No fee will be charged to the Holder for any conversion, except for transfer taxes, if any.

Box Checked as to applicable instructions:

  [x] The Borrower shall electronically transmit the Common Stock issuable pursuant to this Notice of Conversion to the account of the undersigned or its nominee with DTC through its Deposit Withdrawal Agent Commission system ("DWAC Transfer").

    Name of DTC Prime ▮▮ 5
    Broker: Account Number: 2▮▮▮ 571

  [ ] The undersigned hereby requests that the Borrower issue a certificate or certificates for the number of shares of Common Stock set forth below (which numbers are based on the Holder's calculation attached hereto) in the name(s) specified immediately below or, if additional space is necessary, on an attachment hereto:

    _____
    _____

| | |
|---|---|
| Date of Conversion: | 5/14/2020 |
| Applicable Conversion Price: | $ 0.00343 |
| Number of Shares of Common Stock to be Issued Pursuant to Conversion of the Notes: | 2,915,452 |
| Amount of Principal Balance Due remaining Under the Note after this conversion: | $155,000 |

SBI INVESTMENTS LLC, 2014-1

By: _____

Name: Jonathan Juchno

Title: Principal

Date: 5/14/2020

18



Jonathan Juchno <jjuchno@seaotterglobal.com>

---

## PNTV: 2,915,452 shares issued to SBI Investments
20 messages

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>     Mon, May 18, 2020 at 10:13 AM
To: Brian Barthlow <brian@empirestock.com>, Mark Bradley <mbradley@playersnetwork.com>, "Brett H. Pojunis" <bpojunis@playersnetwork.com>, Casey Weseloh <casey@empirestock.com>

Good morning,

Please see attached documentation for the issuance of shares to SBI Investments. Let me know if you need anything else here.

Best,

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



---

   Virus-free. www.avast.com

---

**13 attachments**

📄 **20200514 PNTV 144-Seller Rep SIGNED.pdf**
82K

📄 **20200514 PNTV NoC SIGNED.pdf**
153K

📊 **20190514 PNTV Interest & Conversion Calculations.xlsx**
14K

📄 **SBI_PNTV 4(a)(1) LO 5.14.2020.pdf**
214K

📄 **Disbursement Auth SBI PNTV 2018-05-01 (L&C)(Signed).pdf**
21K

📄 **Empire TA Reserve Ltr SBI PNTV 2018-05-01.pdf**
194K

📄 **Officer's Certificate SBI PNTV 2018-05-01 (L&C)(Signed).pdf**
127K

📄 **Issuance Resolution SBI PNTV 2018-05-01 (L&C)(Signed).pdf**
173K

📄 **SPA SBI PNTV 2018-05-01 (L&C)(Signed).pdf**
139K

📄 **20180503 PNTV (SBI) $3K Legal Wire Confirm.pdf**
104K

📄 **Board Res SBI PNTV 2018-05-01 (L&C)(Signed).pdf**
893K

📄 **20180503 PNTV (SBI) $222K Wire Confirm.pdf**
104K

📄 **$240K Conv Note SBI PNTV 2018-05-01 (L&C)(Signed).pdf**
188K

---

**Brian Barthlow** <brian@empirestock.com>     Mon, May 18, 2020 at 10:57 AM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>, Mark Bradley <mbradley@playersnetwork.com>, "Brett H. Pojunis" <bpojunis@playersnetwork.com>, <casey@empirestock.com>

Morning Jonathan

Not seeing a reservation being set up for this note, we will need an issuance resolution from Players Network to issue these shares

Best Regards

Brian Barthlow

**Empire Stock Transfer Inc.**

**1859 Whitney Mesa Dr.**

**Henderson, Nevada 89014**

brian@empirestock.com | P (702) 818-5898 | F (702) 974-1444 | www.empirestock.com


We are a full-service agent offering:

Transfer Agent & Registrar | EDGAR Filings | Proxy/Annual Meetings | Resident Agent Services


Let us do what we do best so you can do what you do best – run your business.

**Small Cap Agents for Today's Business**


CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the recipient(s) named herein. No part of this document or any attachments may be reproduced or transmitted without permission from Empire Stock Transfer Inc. If you are not the intended recipient, you are hereby notified that any disclosure, distribution, or the taking of any action in reliance upon the contents of this communication is strictly prohibited. If you have received this transmission in error, please notify us immediately.

[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>        Mon, May 18, 2020 at 10:59 AM
To: Brian Barthlow <brian@empirestock.com>, Mark Bradley <mbradley@playersnetwork.com>, "Brett H. Pojunis" <bpojunis@playersnetwork.com>, Casey Weseloh <casey@empirestock.com>

Yep. Mark please confirm. Thanks.

Jonathan Juchno
SEA OTTER GLOBAL VENTURES, LLC

---

**From:** Brian Barthlow <brian@empirestock.com>
**Sent:** Monday, May 18, 2020 10:57:34 AM
**To:** Jonathan Juchno <jjuchno@seaotterglobal.com>; Mark Bradley <mbradley@playersnetwork.com>; Brett H. Pojunis <bpojunis@playersnetwork.com>; Casey Weseloh <casey@empirestock.com>
**Subject:** RE: PNTV: 2,915,452 shares issued to SBI Investments

[Quoted text hidden]

---

**Brian Barthlow** <brian@empirestock.com>        Mon, May 18, 2020 at 11:09 AM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>, Mark Bradley <mbradley@playersnetwork.com>, "Brett H. Pojunis" <bpojunis@playersnetwork.com>, Casey Weseloh <casey@empirestock.com>
Cc: Patrick Mokros <patrick@empirestock.com>, Rico Portaro <rico@empirestock.com>, Casey Weseloh <casey@empirestock.com>

Morning Everyone

Disregard my last e-mail, there are no available shares in treasury to process this request, Players Network will need to increase their authorized before processing

[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>        Mon, May 18, 2020 at 11:56 AM
To: Mark Bradley <mbradley@playersnetwork.com>

Hey Mark—please advise here. You had said there were shares available. Thanks.

Jonathan Juchno
SEA OTTER GLOBAL VENTURES, LLC

---

**From:** Brian Barthlow <brian@empirestock.com>
**Sent:** Monday, May 18, 2020 11:09:20 AM
**To:** Jonathan Juchno <jjuchno@seaotterglobal.com>; Mark Bradley <mbradley@playersnetwork.com>; Brett H. Pojunis <bpojunis@playersnetwork.com>; Casey Weseloh <casey@empirestock.com>
**Cc:** Patrick Mokros <patrick@empirestock.com>; Rico Portaro <rico@empirestock.com>; Casey Weseloh <casey@empirestock.com>
[Quoted text hidden]

[Quoted text hidden]

---

**Brian Barthlow** <brian@empirestock.com>        Mon, May 18, 2020 at 3:01 PM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>, Mark Bradley <mbradley@playersnetwork.com>, "Brett H. Pojunis" <bpojunis@playersnetwork.com>, Casey Weseloh <casey@empirestock.com>

Afternoon Everyone

7/15/2020       Sea Otter Global Ventures L.L.C. Mail - 240,000 shares issued to investment...

Case 20-12890-mkn   Doc 44   Entered 07/20/20 16:56:25   Page 18 of 22

I see the shares out on the DWAC system and you will need to cancel them as I had stated in an earlier email the are no shares available in treasury to process this request, Players network will need to increase their authorized, send us a file stamped copy from the S"OS and a board resolution to process this request

[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>                    Wed, May 20, 2020 at 10:28 AM
To: Mark Bradley <mbradley@playersnetwork.com>, "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Guys,

What's the deal here? I need this resolved ASAP or I need to hand over to my lawyers.

Regards,

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



[Quoted text hidden]

---

**Mark Bradley** <mbradley@playersnetwork.com>                    Wed, May 20, 2020 at 11:33 AM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Jonathan,

It appears is a tremendous amount of shares in reserve for one of the other note holders.
It's actually three times higher than was approved I'm not quite sure why that is.
I will be checking today after the TA opens up.

After I had this information I will let you know thank you Mark
[Quoted text hidden]

---

**Mark Bradley** <mbradley@playersnetwork.com>                    Wed, May 20, 2020 at 5:33 PM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Jonathan,

I have a situation with our reserves, no need to get attorneys involved, can you please send me a current statement, principal, interest and anything else so we can get an accurate number?

Thanks
Mark

[Quoted text hidden]
--
Mark Bradley
**Chairman + CEO**
Player's Network Inc. | Green Leaf Farms
702.241.6222 | Cell
mbradley@PlayersNetwork.com
www.PlayersNetwork.com

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>                    Wed, May 20, 2020 at 6:09 PM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Hi Mark,

See below. I'm sure you'll have an issue with the balance but as per the document, this is correct. I'll add that I'm happy to discuss and I'm sure we can come to an agreement on what you think vs what I think is owed. This doesn't include any liquidated damages for failure to deliver shares timely nor does it include anything about a lack of TA letter..

Take note that Conversion 3 was never honored (the current conversion outstanding).

**The Players Network**
**SBI INVESTMENTS LLC, 2014-1**

| | | | |
|---|---|---|---|
| Face Value: | $240,000.00 | Shares Outstanding | 865,409,104 |
| Purchase Price: | $225,000.00 | *as of 5/13/2020* | 4.99% |
| Note Date: | 5/3/2018 | | 43,183,914 |
| Maturity Date: | 1/28/2019 | | |
| Interest % p.a. | 5% | | |

Default Interest % p.a.     18%

| Event | Event Date | Note Balance | Accrued Interest | Conversion/Penalty Amount | Note Balance After Conv/Pen | Shares | Conversion Price | TA Cost |
|---|---|---|---|---|---|---|---|---|
| Default #1 (3.18) (200%) | 5/8/2018 | $240,000.00 | $164.38 | $120,082.19 | $360,246.58 | | | |
| Maturity Premium (150%) | 1/28/2019 | $360,246.58 | $47,078.80 | $203,662.69 | $610,988.06 | | | |
| Current Financials | 2/1/2019 | $610,988.06 | $1,205.24 | $0.00 | $612,193.30 | | | |
| Conversion 1 | 2/13/2019 | $612,193.30 | $1,006.35 | ($25,000.00) | $588,199.64 | 1,072,501 | $ 0.02331 | $460.00 |
| Conversion 2 | 3/6/2019 | $588,199.64 | $1,692.08 | ($50,000.00) | $539,891.72 | 2,726,281 | $ 0.01834 | $460.00 |
| Conversion 3 | 5/14/2020 | $539,891.72 | $32,171.63 | ($10,000.00) | **$562,063.35** | 2,915,452 | $ 0.003430 | $460.00 |

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>               Tue, May 26, 2020 at 2:12 PM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Mark,

Where do we stand on this? I'm not letting this drag past this week so please advise ASAP.

Thanks,

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>               Fri, May 29, 2020 at 9:11 AM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Mark,

Need some feedback today. Passing this over to Counsel on Monday morning if not.

Thanks,

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>          Mon, Jun 1, 2020 at 9:44 AM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Passing over to my lawyers today, Mark.

Regards,

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974

**SEA OTTER**

[Quoted text hidden]

---

**Mark Bradley** <mbradley@playersnetwork.com>          Mon, Jun 1, 2020 at 1:30 PM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Jonathan sorry for the delay in answering your email. I certainly have not been ignoring you but there are some internal things that are going on right now and I wanted to wait until I was able to share them with you.
What's going on concerns your and other people's notes.

Feel free to pass anything you want on to your attorney keep in mind we will have a complete update for you no later than Thursday but do what you need to do thank you Mark
[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>          Fri, Jun 5, 2020 at 11:29 AM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Mark,

What's the update at this point?

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974

**SEA OTTER**

Virus-free. www.avast.com

[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>          Mon, Jun 8, 2020 at 9:37 AM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Mark--I've held off on issuing you anything because you said you'd have something to me by "no later than Thursday" last week.

Please advise ASAP.

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



 Virus-free. www.avast.com

[Quoted text hidden]

---

**Mark Bradley** <mbradley@playersnetwork.com>                    Mon, Jun 8, 2020 at 12:12 PM
To: Jonathan Juchno <jjuchno@seaotterglobal.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Yes I will contact you this afternoon
[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>                    Tue, Jun 9, 2020 at 6:31 AM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Mark?

Jonathan Juchno
SEA OTTER GLOBAL VENTURES, LLC

---

**From:** Mark Bradley <mbradley@playersnetwork.com>
**Sent:** Monday, June 8, 2020 12:12:50 PM
**To:** Jonathan Juchno <jjuchno@seaotterglobal.com>
**Cc:** Brett H. Pojunis <bpojunis@playersnetwork.com>

[Quoted text hidden]

[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>                    Tue, Jun 9, 2020 at 9:49 PM
To: Mark Bradley <mbradley@playersnetwork.com>
Cc: "Brett H. Pojunis" <bpojunis@playersnetwork.com>

Are we speaking or not?

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



[Quoted text hidden]

---

**Jonathan Juchno** <jjuchno@seaotterglobal.com>                    Mon, Jun 15, 2020 at 10:13 AM
To: Brian Bernstein <bbernstein@nasonyeager.com>

See below...

Jonathan Juchno

Principal

_____

**Sea Otter Global Ventures L.L.C.**

107 Grand Street, 7th Floor

New York, NY 10013

(O) +1.646.762.9974



[Quoted text hidden]