Ryan J. Works, Esq. (NSBN 9224)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com

Philip M. Giordano, Esq.
Sophia E. Kyziridis, Esq.
Giordano & Company P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
pgiordano@reedgiordano.com
skyziridis@reedgiordano.com

*Attorneys for Auctus Fund, LLC*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>PLAYER'S NETWORK, INC.<br><br>                Debtor. | Case No.: 20-12890-mkn<br>Chapter 11<br><br>**REPLY MEMORANDUM OF CREDITOR AUCTUS FUND, LLC IN SUPPORT OF ITS MOTION FOR AN ORDER, PURSUANT TO 11 U.S.C. §§105(A), 363, AND 541 (I) AUTHORIZING ISSUANCE OF CONVERSION NOTICES; (II) REQUIRING DEBTOR TO COMPLY WITH THE NOTICES; AND (III) DEEMING THE AUTOMATIC STAY INAPPLICABLE OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**<br><br>**Hearing Date: September 9, 2020**<br>**Hearing Time: 9:30 a.m.**<br><br>**Hearing Place: Foley Federal Building, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101, Courtroom 2** |

Creditor, Auctus Fund, LLC (hereinafter "Auctus" or the "Fund"), respectfully submits its Reply Memorandum to the Opposition of the Debtor, Player's Network, Inc. (hereinafter "PNTV," the "Debtor," or the "Company") to Auctus's Motion for an Order, Pursuant to 11 U.S.C. §§105(A), 363, and 541 (I) Authorizing Issuance of Conversion Notices; (II) Requiring Debtor to

Comply with the Notices; and (III) Deeming the Automatic Stay Inapplicable or, in the Alternative, Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "<u>Motion</u>").

### **REPLY**

Notwithstanding the Debtor's claim to the contrary, the Ninth Circuit's decision in *Decker v. Advantage Fund Ltd.* squarely controls the issues presented in Auctus's Motion. 362 F.3d (9th Cir. 2004) ("Appellees are correct that unissued stock is not an interest of the debtor corporation in property; it is merely equity in the corporation itself."). The facts in *Decker* align with the facts in this case. In both situations, the party that had been issued shares (as in *Decker)* or which was seeking the issuance of shares (as with Auctus here) already had paid fair and valuable consideration to the debtor to receive the right to convert to common stock. *Id.* (noting that appellees had paid $40 million for the preferred stock that included the option to convert to common shares.) The *Decker* Court appropriately based its holding on the fact that the debtor already had received consideration for the shares and would not receive any consideration by voiding the stock issuance. *Id.* ("'Since an action directed at recovery of corporate stock could only affect equitable ownership of the corporation and would not restore property to the estate or avoid an estate obligation, then it is not a transfer subject to question under Section 548.'") (quoting *In re Curry and Sorenson*, 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986)).

The Debtor in this case already has received full value in issuing the convertible Notes to Auctus. Denying Auctus its right to convert the debt to common shares "would not restore property to the estate or avoid an estate obligation." *Id.* The Creditor respectfully submits that this Court should reject the mischaracterization by the Debtor, grant Auctus's Motion, and authorize the right of Auctus to convert the debt into shares of common stock.

The Debtor has also mischaracterized the holding in *Lehtonen v. Time Warner, Inc. (In re PurchasePro.com, Inc.)*, 332 B.R. 417, 428 (Bankr. Nev. 2005).[1] The Bankruptcy Court in *In re*

---

[1] The Debtor makes no real attempt to distinguish *In re CPT Corp.*, BKY No. 4-90-5759, 1992 Bankr. LEXIS 1474, at *13 (Bankr. D. Minn. Sept. 21, 1992), other than to note it arose in another jurisdiction. And the Debtor makes no attempt at all to distinguish the other cases Auctus has cited for the Court in its Memorandum in support of its Motion.

*PurchasePro.com, Inc.* did not "specifically reject" *Decker*, but merely held it inapplicable to the specific facts before it. And those facts differed markedly from the facts in the instant case and as applicable to Auctus's Motion.

In *PurchasePro.com, Inc.*, the trustee sought to avoid a prior transaction in which America Online, Inc. ("AOL") and the debtor had replaced an initial warrant (the "Original Warrant") with a new warrant (the "Amended Warrant"). The Original Warrant required AOL to pay a strike price to purchase the debtor's shares, while the Amended Warrant eliminated the cash strike price altogether. *Id.* at 422. The trustee alleged that the amendment to the warrant, permitting AOL to acquire debtor's stock without paying anything, unjustly enriched AOL by over $57 million. *Id.* at 423.

The *PurchasePro.com, Inc.* Court distinguished the facts in that case from those in *Decker* on the grounds that AOL was able to obtain the shares without paying any strike price. It noted that the party in *Decker*, just as Auctus here, already had paid to the debtor fair value for the right to convert to the stock. *Id.* at 422 ("In short, rather than paying money for PP stock, AOL simply had to certify that it had caused others to use and pay for a certain minimum level of PP's products and services.")

The Bankruptcy Court in *PurchasePro.com, Inc.* grounded its decision on this factual distinction. *Id.* at 425 ("TW argues, however, that while the shares or warrants may very well be property in the hands of the shareholder, they are not property for the issuer. In this regard, they properly raise the policy concerns outlined in *Decker* and in *Curry & Sorensen* to the effect that avoidance of a stock issuance can have no real effect on creditors. . . . But are the same concerns about stock issuance present when the transaction is the exchange of one warrant for another?") (citing *Decker* and *In re Curry and Sorenson*, 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986)). The *PurchasePro.com, Inc.* court held that the trustee's claim that the exchange of the Original Warrant for the Amended Warrant deprived the debtor of AOL cash upon exercise had AOL and the debtor not remove the strike price, and that "*avoidance of the warrant exchange could lead to creditor recoveries.*" *Id.* at 428 (emphasis added). That ability to recover the potential value of the restored strike price distinguishes *PurchasePro.com, Inc.* from the cases which govern the

analysis in the instant action and upon which Auctus relies in its Motion. *Id*. at 429 ("This theory of recovery provides additional grounds to distinguish *Decker* and *Curry & Sorensen.* In those cases, avoidance would not have resulted in recovery to creditors; it would simply rearrange ownership interests.")

The Debtor has failed to demonstrate that a denial of Auctus's Motion could "lead to creditor recoveries." *Id.* In fact, as Auctus has amply demonstrated in its Memorandum in support of its Motion, the opposite is true. If Auctus is permitted to convert some of its debt to PNTV common stock, the Debtor's total debt would be reduced, with no decline in its assets. In short, allowing Auctus's Motion is more likely to lead to creditor recoveries.

Aside from its failed attempt to distinguish Auctus's cases, the Debtor makes no real attempt to explain why this Court should deny Auctus's motion. The Debtor fails to explain its assertion that granting Auctus's Motion would interfere with the Bankruptcy case when any viable proposed plan of reorganization is curiously absent. Auctus has provided ample arguments to show how granting its Motion would help facilitate the Bankruptcy case. In addition, while the Debtor argues that allowing Auctus's Motion will "severely" damage Debtor's stock value, it also claims that Auctus would obtain a "windfall" by receiving shares of a bankrupt public company. The Debtor has provided no evidence that permitting Auctus to convert will cause any decline whatsoever in the current prices of the Company's public stock. Moreover, a cursory review of public information demonstrates that the Debtor's stock price has suffered a severe decline since the Creditor provided the loan to the Debtor, and Auctus will not receive any possible "windfall."

The Debtor has simply failed to provide any basis for this Court to disregard the Ninth Circuit's clear holding in *Decker* that supports a finding that the Debtor does not have a property interest in the stock to be issued. *Decker*, 362 F.3d at 596. Auctus respectfully requests that the Court grant its Motion.

**CONCLUSION**

For the reasons stated herein and in its Memorandum in support of its Motion, Auctus respectfully requests that this Court grant the Creditor Auctus Fund, LLC's Motion for Order Authorizing Conversions and issue an Order authorizing the Fund to issue and deliver Conversion Notices and requiring the Company and its Transfer Agent to issue Shares of PNTV common stock in accordance herewith. In the alternative, Auctus respectfully requests that this Court grant Auctus relief from the Automatic Stay in all respects and permit Auctus to issue Conversion Notice and thereby compelling PNTV and its TA to comply with such Notices.

Dated this 2nd day of September, 2020.

McDONALD CARANO LLP

By: */s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com

Of Counsel:

Philip M. Giordano, Esq.
Sophia E. Kyziridis, Esq.
Giordano & Company P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
pgiordano@reedgiordano.com
skyziridis@reedgiordano.com

*Attorneys for Auctus Fund, LLC*

4827-2002-1705, v. 1