_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
October 23, 2020

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

In re:  ) Case No.: 20-12890-MKN
) Chapter 11
PLAYERS NETWORK, )
dba THE PLAYERS NETWORK )
dba THE PLAYERS NETWORK, INC. ) Date: October 7, 2020
) Time: 9:30 a.m.
Debtor. )

**ORDER ON CONVERTIBLE NOTE HOLDER, SBI INVESTMENTS LLC, 2014-1'S MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASE FOR CAUSE UNDER 11 U.S.C. §§305(A)(1), 1112(b), & 1129(A)(3)**[1]

On October 7, 2020, the court heard the Convertible Note Holder, SBI Investments LLC, 2014-1's Motion to Dismiss Debtor's Chapter 11 Case for Cause Under 11 U.S.C. §§305(A)(1), 1112(b), & 1129(A)(3) ("SBI Dismissal Motion") brought by SBI Investments LLC, 2014-1 ("SBI"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

**BACKGROUND**

On June 17, 2020, a voluntary Chapter 11 petition was filed by Players Network, dba The Players Network and dba The Players Network, Inc. ("Debtor"). The petition was filed under Subchapter V of Title 11, accompanied by the Debtor's schedules of assets and liabilities ("Schedules"), statement of financial affairs ("SOFA"), list of equity security holders ("Equity

___
[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court. All references to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. § 101, et seq. All references to "FRBP" are to provisions of the Federal Rules of Bankruptcy Procedure.

1

Holders List") and other required information. (ECF No. 1). Debtor commenced the case under Subchapter V that created a subset of Chapter 11 relief under the Small Business Reorganization Act of 2019 ("SBRA"),[2] effective February 19, 2020.[3] According to Parts 1, 2, 3, and 9 of its property Schedule "A/B," Debtor has no cash or cash equivalents, no deposits or prepayments, no accounts receivable, and no real property. According to Part 4 of its property Schedule "A/B," Debtor has an 86 percent ownership interest in an entity identified as Green Leaf Farm Holdings and a 95 percent ownership interest in a separate entity identified as GLFI, Inc. According to Item 25 of its SOFA, the business of the former entity is described as "agriculture" and the latter entity as "consulting and management services." According to its Schedule "D," Debtor has no secured creditors. According to Item 28 of its SOFA, Debtor has three directors, Brett Pojunis, Michael Berk, and Mark Bradley ("Bradley"), whose combined interest in the Debtor is a total of 11 percent. Debtor's Equity Holders List discloses the names of the directors and their same interests, and that "all other shareholders" own 720 million shares of stock representing an 89 percent ownership interest.[4]

On June 18, 2020, Debtor filed a motion seeking to excuse it from listing its equity security holders ("Equity Excuse Motion"). (ECF No. 17). The motion was noticed to be heard on July 22, 2020. (ECF No. 18).[5]

---

[2] Under the SBRA, the provisions for appointment of Chapter 11 committees of unsecured creditors or equity security holders under Section 1102, do not apply in Subchapter V proceedings unless specifically ordered by the court. See 11 U.S.C. § 1181(b).

[3] A Notice of Chapter 11 Bankruptcy Case ("Bankruptcy Notice") was issued scheduling a meeting of creditors for July 23, 2020. (ECF No. 4).

[4] On June 17, 2020, Debtor filed a copy of a Resolution of the Board of Directors of Players Network, signed by all of its directors, authorizing the filing of the Chapter 11 petition. (ECF No. 5). On the same date, Debtor filed a Resolution in Lieu of Directors' Meeting that prohibited the issuance of additional non-voting securities during the pendency of the Chapter 11 proceeding. (ECF No. 6).

[5] On June 22, 2020, Debtor filed a Certificate of Mailing evidencing service of the Equity Excuse Motion. (ECF No. 24). The United States Securities and Exchange Commission ("SEC") is not included on the list of entities served with the motion. FRBP 2002(j) provides

On June 29, 2020, Debtor filed a motion to convert the Chapter 11 case to a non-Subchapter V proceeding.[6] (ECF No. 33).

On July 8, 2020, the conversion motion was heard on an expedited basis pursuant to an order shortening time. (ECF No. 36).

On July 14, 2020, an order was entered converting the Chapter 11 case to a non-Subchapter V reorganization proceeding.[7] (ECF No. 41). Another Bankruptcy Notice was entered scheduling a meeting of creditors for August 13, 2020, and setting deadlines for filing proofs of claim. (ECF No. 42).[8]

On July 23, 2020, an order was entered denying the Equity Excuse Motion without prejudice.[9] (ECF No. 46).

---

that notices required to be served on all creditors must be mailed "in a chapter 11 reorganization case, to the Securities and Exchange Commission at any place the Commission designates . . ."

[6] Confirmation of a Chapter 11 plan of reorganization under Subchapter V is governed by Section 1191. Confirmation of a Subchapter V plan does not require compliance with Section 1129(b)(2)(B). See 11 U.S.C. § 1181(a). Section 1129(b)(2)(B) encompasses the "absolute priority rule" that precludes equity holders from retaining their interest in a reorganizing entity unless allowed unsecured claims are paid in full. See In re Green Pharmaceuticals, Inc., 617 B.R. 131, 135-136 (Bankr. C.D. Cal. 2020), citing Everett v. Perez (In re Perez), 30 F.3d 1209, 1214 (9th Cir. 1994). By converting its case to a non-Subchapter V proceeding, the Debtor must overcome the absolute priority rule to confirm a Chapter 11 plan over the objections of any class of unsecured claims. Id. Typically, the existing equity holders must contribute "money or money's worth" equal the value of the interest that is retained. Id. at 136.

[7] After the Chapter 11 case was converted to a non-Subchapter V proceeding, there is no indication in the record that steps were taken to form a committee of unsecured creditors or equity security holders.

[8] On July 16, 2020, a Certificate of Notice was filed listing the entities served by first class mail and electronic mail, none of which was the SEC. (ECF No. 43).

[9] FRBP 1007(a)(3) applies in Chapter 11 cases. Within 14 days after the case is commenced, the debtor in possession is required to file a list of its "equity security holders of each class showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder." The Equity Excuse Motion was filed one day after the Debtor commenced the instant case, but the motion was denied on July 23, 2020. The order denying the motion was not appealed nor has it been stayed. As of the date the instant SBI Motion was filed, i.e., August 28, 2020, Debtor still had not filed an amendment to

On August 3, 2020, Auctus Fund, LLC ("Auctus") filed a motion seeking, inter alia, relief from stay authorizing it to send notices requiring a transfer agent to issue reserved shares of common stock in exchange for unpaid debts arising from certain prepetition stock purchase transactions ("Auctus RAS Motion").  (ECF No. 61).

On August 26, 2020, Debtor filed an opposition to the Auctus RAS Motion.  (ECF No. 69).

On August 28, 2020, the instant SBI Dismissal Motion was filed, accompanied by the declaration of Jonathan Juchno ("Juchno Declaration").  (ECF Nos. 82 and 83).  The motion was noticed to be heard on October 7, 2020.  (ECF No. 84).

On September 2, 2020, Auctus filed its reply in support of the Auctus RAS Motion. (ECF No. 106).

On September 9, 2020, Debtor filed a disclosure statement ("Disclosure Statement") to accompany its proposed Chapter 11 Plan of Reorganization ("Plan").  (ECF Nos. 114 and 116). A hearing to approve the Disclosure Statement was noticed for October 21, 2020.[10]  (ECF No. 115).[11]

On September 17, 2020, an order was entered granting the Auctus RAS Motion.  (ECF No. 120).[12]

---

its Equity Holders List providing the required information for "all other shareholders" that own 720 million shares of stock, i.e., 89 percent.

[10] At the hearing on the instant motion, the court informed counsel that the October 21, 2020, hearing on the Disclosure Statement would be for status purposes only and that any written objections to the Disclosure Statement need not be filed before that hearing.

[11] On September 10, 2020, Debtor filed a Certificate of Mailing evidencing service of the notice of hearing on approval of the Disclosure Statement.  (ECF No.118).  The SEC is not included on the list of entities served with the motion.

[12] On October 1, 2020, Debtor filed a notice appealing that order.  (ECF No. 135).

4

1   On September 23, 2020, Debtor filed an opposition to the SBI Dismissal Motion ("Opposition") along with a declaration of Mark Bradley ("Bradley Declaration"). (ECF Nos. 129 and 130).

On September 29, 2020, SBI filed a reply to Debtor's Opposition ("Reply"). (ECF No. 131).

On September 30, 2020, the office of the United States Trustee ("UST"), filed a separate motion to dismiss the Chapter 11 case under 11 U.S.C. § 1112(b) that is noticed to be heard on November 4, 2020. (ECF Nos. 132 and 133).

## DISCUSSION

The instant motion seeks to dismiss this Chapter 11 proceeding based on Sections 305(a)(1), 1112(b), and 1129(a)(3). The request is supported by the Juchno Declaration to which is attached copies of six separate documents alphabetically marked as exhibits "A" through "F."[13] Exhibit "A" is a Form 8-K dated December 10, 2019, filed with the Securities and Exchange Commission by Players Network, Inc.[14] Exhibit "B" is a press release dated August 20, 2019, issued by Green Leaf Farms International. Exhibit "C" is a Players Network, Inc. Shareholder Update April 20, 2020. Exhibit "D" is an email message from Mark Bradley dated July 21, 2020, providing a Shareholder Update July 21, 2020 for Players Network Inc. Exhibit "E" is an email message from Mark Bradley dated August 18, 2020, providing a Shareholder Update August 18, 2020, for Players Network Inc. Exhibit "F is an email message from Mark Bradley dated August 19, 2020, providing a Shareholder Update August 19, 2020, for Players Network Inc. Debtor's Opposition to the SBI Motion does not dispute any of the statements made in the Juchno Declaration, nor does the Bradley Declaration contradict any of the factual

---

[13] All six of the exhibits attributable to the Debtor include references to business operations involving the production and/or distribution of cannabis-related (marijuana) products.

[14] In Chapter 11 proceedings, the SEC "may raise and may appear and be heard on any issue in a case under this chapter, but . . . may not appeal from any judgment, order, or decree entered in the case." 11 U.S.C. § 1109(a). It does not appear from the record, however, that the Debtor has ever attempted to provide notice to the SEC of various items of relief it has sought in this Chapter 11 proceeding. See notes 5, 8, and 11, supra,

5

assertions, or the authenticity of any of the exhibits made or referenced in the Juchno Declaration.

Other than identifying Sections 305(a)(1), 1112(b), and 1129(a)(3) in the footnotes of its motion, see SBI Dismissal Motion at 2:1-2 & nn. 2, 3, and 4, SBI does not identify or discuss any applicable standards governing the application of the statutes. Similarly, Debtor's Opposition mentions the title to the SBI Dismissal Motion that specifically includes those Sections of the Bankruptcy Code, but otherwise does not discuss the application of the statutory language. See Opposition at 2-3. Unfortunately, SBI's Reply also omits any discussion of the actual basis for the instant motion, but instead focuses on the inconsistencies between the representations made in the Bradley Declaration[15] and the representations made by Bradley in the post-bankruptcy emails sent to shareholders.

The court having considered the written and oral arguments of counsel, together with the written testimony and materials filed by the Debtor in this proceeding, concludes that dismissal of the Chapter 11 proceeding is appropriate.[16] Several reasons compel this conclusion.

First, Section 1112(b)(1) requires conversion or dismissal of a Chapter 11 case "for cause unless the court determines that appointment under section 1104(a) of a trustee . . . is in the best interests of creditors and the estate." Section 1112(b)(4) describes various non-exclusive examples of "cause," one of which consists of a "substantial or continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). According to the Debtor's Schedule "A/B," it had no cash or cash equivalents, no deposits or prepayments, and no accounts receivable when it commenced this Chapter 11

---

[15] SBI also objects that the Bradley Declaration reflects a handwritten signature, but contains no statement that it is signed or executed under penalty of perjury as is required by 28 U.S.C. §1746. See Reply at 3 n.3. The objection is well taken, but does not materially affect the outcome of the motion.

[16] At the hearing, counsel for Auctus represented that in Pharmagreen Biotech, Inc., Case No. 20-50780-BTB, a Chapter 11 proceeding in this judicial district recently was dismissed inasmuch as the petitioner was engaged in the production of cannabis or marijuana products in violation of the Controlled Substances Act, 21 U.S.C. § 801, et seq. ("CSA"). No explanation was provided, however, as to the facts or circumstances of that Chapter 11 proceeding.

proceeding on June 17, 2020.  According to its operating report for the partial month of June 2020, Debtor had cash receipts of $12,500 consisting solely of funds from shareholders, partners, or insiders, and a net operating loss of $8,521.  (ECF No. 47).  According to its operating report for the month of July 2020, Debtor had cash receipts of $25,000 consisting solely of funds from shareholders, partners, or insiders, and a net operating loss of $32,202.  (ECF No. 119).

Second, the Disclosure Statement accompanying the Debtor's proposed Plan offers little prospect of confirmation.  Implementation of the proposed Plan purportedly would be based solely on the "disposable income received by Debtor."  Plan, Art. VI.  Unfortunately, the Disclosure Statement provided with the proposed Plan is based on Chapter 11 reorganization efforts of an individual debtor rather than a publicly traded corporation.  For example, the Valuation discussion in the Disclosure Statement refers to the gender of an individual seeking to avoid a simple liquidation of "her property."[17]  See Disclosure Statement at 11.  The Feasibility discussion in the Disclosure Statement references the Debtor's ability to pay all oversecured and undersecured creditors, see id. at 13, while its chief executive officer attested in its Schedule "D" that the Debtor has no secured creditors.  The same Feasibility discussion also references the Debtor's ability to maintain, repair and pay homeowners association dues on real property, see id. at 15, when its Schedule "A/B" attested that it has no real property.  The Tax Impact discussion in the Disclosure Statement references the Debtor's earnings received from post-petition services as property of a bankruptcy estate under Section 1115(a)(2), see id. at 15, but that statute applies only to individuals in Chapter 11 rather than corporate debtors.  Exacerbating the latter mistake, the Summary of the Plan of Reorganization in the Disclosure Statement

---

[17] There are several other instances in which the Disclosure Statement refers to the Debtor as "she" or "her."  While a "person" under bankruptcy law may include an individual, partnership, or corporation, see 11 U.S.C. § 101(41), ascribing gender to the inanimate entity in this bankruptcy proceeding arguably is consistent with the Debtor's fundamentally misguided approach.  Unlike an individual, a corporation reorganizing under Chapter 11 receives a discharge upon confirmation of a plan of reorganization, rather than upon completion of plan payments through an individual's disposable income.  Compare 11 U.S.C. § 1141(d)(1) with 11 U.S.C. § 1141(d)(5)(A).

perhaps explains the Debtor's reference to "disposable income" as a means of implementing its plan: it discusses a Chapter 11 debtor's requirement to pay projected disposable income over a five year period if an unsecured creditor objects to plan confirmation under Section 1129(a)(15)(B). See id. at 17. Section 1129(a)(15) by its express terms applies only in "a case in which the debtor is an individual . . . " In essence, the Debtor's proposed Disclosure Statement that must be approved by the court to authorize solicitation of Plan acceptance, see 11 U.S.C. § 1125(b), describes a plan of reorganization that cannot exist in this proceeding.

Third, a separate example of cause for conversion or dismissal under Section 1112(b)(1) includes the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or any rule applicable to a case under this title." 11 U.S.C. § 1112(b)(4)(F). In this instance, Debtor was required under FRBP 1007(a)(3) to file a complete list of shareholders "showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder." See discussion at note 9, supra. The Equity Excuse Motion sought to relieve the Debtor of this obligation, but the Debtor's request was denied on July 23, 2020. Debtor therefore was required to file that complete list no later than 14 days after its request was denied. Debtor has breached and remains in breach of the filing requirement imposed under FRBP 1007(a)(3).

Fourth, Debtor's failure to file a complete list of shareholders is significant. Not only is it an example of cause for conversion or dismissal within the meaning of Section 1112(b)(4)(F), it also magnifies the Debtor's failure to provide notice of the Chapter 11filing to the SEC. Debtor does not contest that the Form 8K dated December 10, 2019, was filed with the SEC and is part of the public record. Debtor does not dispute that its chief executive officer sent its shareholders an update as of April 20, 2020, approximately two months before the instant Chapter 11 proceeding was commenced. Debtor does not dispute that its shareholders were sent an update on July 21, 2020, approximately one month after the instant Chapter 11 proceeding was commenced. Debtor does not dispute that its shareholders were sent additional updates as of August 18, 2020, and August 19, 2020, approximately two months after the instant Chapter 11

proceeding was commenced. There is no dispute that a copy of the Bradley Declaration has not been served on a complete list of shareholders, nor is there evidence that a copy was ever served or provided to the SEC. The contrast between the picture painted of the Debtor's operations in seeking bankruptcy relief compared to the operations described to shareholders is stark: the former seeks to remain in bankruptcy by denying its engagement in commerce that may be in violation of federal law,[18] while the latter promotes such conduct as providing a means for return on investment. The absence of shareholder participation, or scrutiny by the SEC, also is magnified by the absence of a creditors or shareholders committee being solicited or formed in the case.[19]

    Finally, the Debtor has failed its burden under Section 1112(b)(2) of establishing a reasonable likelihood that a plan will be confirmed within a reasonable amount of time, or that there is a reasonable justification for an act or omission constituting cause that can be cured in a reasonable period of time. See 11 U.S.C. §§ 1112(b)(2)(A) and 1112(b)(2)(B)(i, ii). As

---

[18] Debtor alleges that its operations do not run afoul of the CSA, and therefore its proceeding is not subject to dismissal for lack of good faith under Section 1129(a)(3), nor on the basis of abstention under Section 305(a). Although the instant motion purportedly is brought under both of those sections, it is unnecessary to consider whether either section applies in view of the court's conclusions under Section 1112(b). Moreover, in this circuit, there appears to be no per se rule precluding a Chapter 11 plan from being proposed in good faith based solely on the debtor's relationship to commerce involving marijuana or cannabis products. See, e.g., Garvin v. Cook Investments NW, SPNWY, LLC (In re Cook Investments NW), 922 F.3d 1031, 1036 (9th Cir. 2019) (distinguishing between plans being proposed in good faith and post-confirmation operations being conducted in good faith). Moreover, dismissal of a bankruptcy proceeding based on abstention typically requires the presence of another forum in which the parties' pending disputes may be addressed. See, e.g., In re CW Nevada LLC, 602 B.R. 717, 747 (Bankr. D. Nev. 2019) (dismissal of a cannabis-related Chapter 11 proceeding permitted parties to return to a prepetition receivership action pending in state court). No existing, non-bankruptcy proceeding has been identified by SBI in this case.

[19] As mentioned in note 2, supra, this Chapter 11 case originally was filed as a Subchapter V proceeding in which the solicitation and formation of unsecured creditors and equity holders' committees generally do not occur. Also as mentioned in note 7, supra, there is no evidence that steps were taken to form such a committee after the case was converted to a non-Subchapter V proceeding. In the future, orders granting similar conversions will include a directive to solicit the formation of such committees.

previously discussed, Debtor's proposed Plan as described in its Disclosure Statement is a non-starter at best, and its disclosures are misleading at worst.  Moreover, Debtor has offered no explanation for its failure to timely file a complete list of shareholders in compliance with FRBP 1007(a)(3) nor has it even suggested a time by which it can do so.

For these reasons, the court concludes that SBI has met its burden of establishing cause within the meaning of Section 1112(b)(4)(A) as well as under Section 1112(b)(4)(F).  Additionally, the court concludes that the Debtor has not met its burden of establishing either alternative under Section 1112(b)(2), regardless of whether the Bradley Declaration was signed under penalty of perjury.  As a result, dismissal of this Chapter 11 proceeding is appropriate under Section 1112(b)(1).[20]

**IT IS THEREFORE ORDERED** that the Convertible Note Holder, SBI Investments LLC, 2014-1's Motion to Dismiss Debtor's Chapter 11 Case for Cause Under 11 U.S.C. §§305(A)(1), 1112(b), & 1129(A)(3), Docket No. 82, be, and the same hereby is, **GRANTED**.

**IT IS FURTHER ORDERED** that all pending hearings and any other matter in this Chapter 11 proceeding are **VACATED AND THAT THE CASE MAY BE CLOSED**.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
PLAYERS NETWORK
ATTN:  OFFICER/MANAGING AGENT
3939 BELMONT STREET
LAS VEGAS, NV 89119

# # #

---

[20] SBI requests that the court reserve jurisdiction "to consider Rule 9011 sanctions for the filing of this case." SBI Dismissal Motion at 8 n.21.  There is no such relief requested in the prayer of the motion itself nor is there any evidence in the Juchno Declaration, or any other source, that SBI complied with the safe harbor provisions of FRBP 9011.  The request to "reserve jurisdiction" is denied.